UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BORGESS MEDICAL CENTER, et al.     )
                                    )
    Plaintiff,                      )
                                    )
        v.                          )   Civil Case No. 12-144 (RJL)
                                    )
KATHLEEN SEBELIUS, *Secretary*      )
*Department of Health and Human Services*  )
                                    )
    Defendant.                      )

MEMORANDUM OPINION
(September 4, 2013) (Dkts. ##19, 21)

Plaintiffs Borgess Medical Center ("Borgess") and Bronson Methodist Hospital ("Bronson") ("plaintiffs" or "Hospitals," collectively) commenced this action against Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), pursuant to 42 U.S.C. § 1395 *et seq.*, seeking judicial review of the Secretary's denial of reimbursements for costs associated with offsite resident training during fiscal years 2000 through 2004. *See* Compl. [Dkt. #1]. Before the Court are the parties' cross-motions for summary judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court GRANTS defendant's Motion for Summary Judgment [Dkt. #21] and DENIES plaintiffs' Motion for Summary Judgment [Dkt. #19].

1

## BACKGROUND

### A. Statutory and Regulatory Background

The Medicare Act provides health insurance benefits to eligible elderly and disabled persons. 42 U.S.C. § 1395 *et seq.* The Centers for Medicare and Medicaid Services ("CMS") administers the program for the Secretary. 42 U.S.C. § 1395kk; 42 C.F.R. § 400.200 *et seq.* Medicare Part A serves as hospital insurance and covers the cost of hospital care, related post-hospital care, home health services, and hospice care. 42 U.S.C. § 1395c *et seq.* The Secretary contracts with fiscal intermediaries to determine and process payments to hospitals. 42 U.S.C. § 1395h. At the close of the fiscal year, a participating hospital submits a cost report to its intermediary. 42 C.F.R. §§ 413.20, 413.24. After auditing the report, the intermediary issues a Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803. A hospital may challenge an NPR by requesting a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). The PRRB's decision is subject to review by the CMS Administrator. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a). The Administrator's decision constitutes a final agency decision subject to judicial review. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

Under Part A of the Medicare program, hospitals that operate approved medical residency programs are entitled to reimbursement for certain costs related to graduate medical education. Medicare makes both a direct graduate medical education payment ("GME") and an indirect graduate medical education payment ("IME"). GME costs include residents' salaries and fringe benefits, as well as compensation paid to teaching

physicians and supervisors. 42 U.S.C. § 1395ww(h); 42 C.F.R. § 413.86(b)(3) (1998). IME costs include higher-than-average operating costs incurred as an indirect result of having a teaching program. 42 U.S.C. §§ 1395f(b), 1395ww(d); 42 C.F.R. § 412.105 (1998).

Congress amended the Medicare statute in 1986 and 1997 to include the time residents spend training in nonhospital settings in GME and IME payment calculations. *See* 42 U.S.C. §§ 1395ww(d)(5)(B)(iv), 1395ww(h)(4)(E). These statutory provisions ("Nonhospital Site Statutes") permit reimbursement so long as (1) the residents' time is related to patient care, and (2) the hospital incurs all, or substantially all, of the costs for the training program in the nonhospital setting. *Id.* The Nonhospital Site Statutes do not define the second requirement, which is referred to herein as the "All or Substantially All Requirement."

For the cost reporting years at issue in this case, the Secretary's regulations defined the statutory All or Substantially All Requirement to include:

> the residents' salaries and fringe benefits (including travel and lodging where applicable) and the portion of the cost of teaching physicians' salaries and fringe benefits attributable to direct graduate medical education.

42 C.F.R. § 413.86(b)(3) (1998), AR at 0645. The Secretary also imposed an additional regulatory requirement that, in order for a hospital to count resident training time at nonhospital sites, the hospital must have a written agreement with the nonhospital site

> indicat[ing] that the hospital will incur the cost of the resident's salary and fringe benefits while the resident is training in the nonhospital site and the hospital is providing reasonable compensation to the nonhospital site for supervisory teaching activities. The agreement must indicate the

3

compensation the hospital is providing to the nonhospital site for supervisory teaching activities.

42 C.F.R. § 413.86(f)(4)(ii) (1998), AR at 0648. This regulation is referred to herein as the "Written Agreement Requirement."

### B. Factual and Procedural Background

Plaintiffs are non-profit acute care hospitals located in Kalamazoo, Michigan. The Hospitals have agreements with the Michigan State University Kalamazoo Center for Medical Studies ("KCMS") to rotate medical residents through KCMS' nonhospital clinic facility ("Affiliation Agreements"). *See* AR at 931–42. The Hospitals' joint resident training program dates back to 1973, when they entered into an agreement establishing the predecessor of KCMS, the Southwestern Michigan Area Health Education Center ("SWMAHEC"). AR at 796–800. The 1973 Agreement, which remains in effect, provides that the Hospitals "shall provide the CORPORATION with financing to carry out its purposes as negotiated on a yearly basis." *See* AR at 799, 811–15. In 1989, the Hospitals expanded the joint training program to include rotations at KCMS clinics. The Affiliation Agreements state that the Hospitals "share[] joint and equal responsibility for providing [KCMS] with sufficient financing to carry out [the KCMS] programs as negotiated on a yearly basis." AR at 931, 933, 935, 937, 939, 941.

The Hospitals claim that their former fiscal intermediary, United Government Services ("UGS"), allowed Medicare reimbursement for costs the Hospitals incurred for resident rotations at KCMS clinics. *See* Compl. ¶ 23. In 2008, however, the Hospitals' current fiscal intermediary, National Government Services ("NGS"), began to issue NPRs

4

and revised NPRs disallowing reimbursement for these costs.[1] *Id.* at ¶ 24. NGS claimed that the Hospitals could not satisfy the statutory All or Substantially All Requirement because they split the costs of the KCMS training program. *Id.* NGS also found that the Hospitals failed to meet the Written Agreement Requirement. *See* AR at 47.

The Hospitals successfully challenged NGS' disallowances before the PRRB. *See* Compl. at ¶ 31; AR at 38–52. The PRRB concluded that the Hospitals satisfied the All or Substantially All Requirement because the two Hospitals jointly paid all of the costs of the resident training program at KCMS. AR at 48–50. The PRRB also held that the Hospitals satisfied the Written Agreement Requirement. AR at 46–48. The PRRB's decision was reversed, however, by the CMS Administrator, acting under authority delegated by the Secretary. AR at 2–19. The Administrator interpreted the All or Substantially All Requirement to preclude multiple hospitals from sharing the costs of nonhospital training ("Single Hospital Interpretation"). AR at 17. The Administrator also concluded that the Hospitals failed to comply with the Written Agreement Requirement. AR at 18. Plaintiffs now challenge that final agency decision.

## STANDARD OF REVIEW

The Medicare Act provides for judicial review of the Administrator's final decision under the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1). Under the APA's strict standard of review, the Court must set aside agency actions,

---

[1] NGS issued revised NPRs for Borgess' fiscal years ended ("FYE") 6/30/01, 6/30/02, and 6/30/03, Compl. at ¶ 25, and for Bronson's FYE 12/31/00, 12/31/01, and 12/31/02, *id.* at ¶ 27. NGS also issued NPRs denying reimbursement for Bronson's FYE 12/31/03 and 12/31/04. *Id.* at ¶ 28.

findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard, an agency action "may be invalidated . . . if [it is] not rational and based on consideration of the relevant factors." *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–16 (1971)). Factual conclusions are reviewed under the substantial evidence standard and may be overturned where they are "unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E); *see also Overton Park*, 401 U.S. at 414. The Supreme Court has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620. In applying the substantial evidence standard, the reviewing court may not "displace . . . [a] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

The Supreme Court has established a two-step framework for reviewing an agency's interpretation of a statute that the agency administers. *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984). Under the first step, the Court must look at the

statute to determine whether Congress has "directly spoken to the precise question at issue." *Id.* at 842. If it has, "that is the end of the matter." *Id.* If, however, "the statute is silent or ambiguous with respect to the specific issue," the court proceeds to *Chevron* step two and must determine whether the agency's interpretation is "based on a permissible construction of the statute." *Id.* at 843. Under this second step, the Secretary's statutory interpretation will be given controlling weight so long as it falls "within the bounds of reasonable interpretation." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999). The Secretary's reading "need not be the only reasonable one" in order to be upheld. *Conn. Dep't of Income Maint. v. Heckler*, 471 U.S. 524, 532 (1985). Where a Medicare statutory provision is subject to multiple reasonable interpretations, courts defer to the Secretary's interpretation. *See Gentiva Healthcare Corp. v. Sebelius*, 2013 WL 3800066, *3 (D.C. Cir. 2013).

When the agency action at issue is "the construction of an administrative regulation rather than a statute . . . deference is even more clearly in order." *Udall v. Tallman*, 380 U.S. 1, 16 (1965). "[T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quotations and citations omitted). In other words, a court "must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Id.* (quotations and citations omitted). The more complex a regulatory program is, the greater the deference owed. *See id.*; *see also Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229

7

(D.C. Cir. 1994) ("[I]n framing the scope of review, the court takes special note of the tremendous complexity of the Medicare statute. That complexity adds to the deference which is due to the Secretary's decision.").

## ANALYSIS

This case involves the issue of whether plaintiff Hospitals are entitled to reimbursement under the Medicare Act for costs the Hospitals incurred in training medical residents at KCMS during fiscal years 2000 through 2004. I agree with the Secretary's decision denying plaintiffs reimbursement for two reasons. First, the Nonhospital Site Statutes are reasonably read to require the Secretary to disallow reimbursement where two or more hospitals split the costs of nonhospital training. Second, the Hospitals' Affiliation Agreements with KCMS do not satisfy the Written Agreement Requirement. Accordingly, the Secretary's decision denying reimbursement was reasonable and not arbitrary, capricious, or in violation of the law, and the Court will grant the Secretary's Motion for Summary Judgment.

Congress did not speak directly to whether the All or Substantially All Requirement is satisfied where there is cost-splitting between two or more hospitals. Plaintiffs, of course, interpret the Nonhospital Site Statutes to permit reimbursement where cost-splitting occurs. By contrast, the Secretary has concluded that the Single Hospital Interpretation is necessary to comply with the statutory requirements. Indeed, in 2007, the Secretary clarified the Single Hospital Interpretation in the Federal Register via notice and comment procedures:

> . . . under current policy, if two (or more) hospitals train residents in the same accredited program, and the residents rotate to the same nonhospital site(s), the hospitals cannot share the costs of that program at that nonhospital site . . . as we do not believe this is consistent with the statutory requirement . . . that the hospital incur "*all, or substantially all, of the costs for the training program in that setting.*"

72 Fed. Reg. 26870, 26969 (May 11, 2007) (emphasis in original). This clarification, however, did not constitute a substantive change in payment policy. Prior to any of the cost reporting years at issue in this case, the Secretary announced that

> Under sections 1886(d)(5)(B)(iv) and 1886(h)(4)(E) of the Act, *a hospital* may include the time a resident spends in nonprovider settings in its indirect medical education (IME) and direct GME full-time equivalent count *if it incurs* "all or substantially all" of the costs of training residents in the nonhospital site.

63 Fed. Reg. 40954, 40986 (July 31, 1998) (emphasis added). And, in 2003, the Secretary stated in the Federal Register that a hospital could not qualify for reimbursement of its offsite medical education costs if it funds only a portion of the offsite training program. *See* 68 Fed. Reg. 45346, 45439 (Aug. 1, 2003).

I defer to the Secretary's Single Hospital Interpretation because it is reasonable and consistent with the plain language of the All or Substantially All Requirement. Congress used the singular terms "hospital" and "program," rather than plural terms "hospitals" and "programs." Not surprisingly, Congress later used alternative language in the Patient Protection and Affordable Care Act ("PPACA"), which revised the Nonhospital Site Statutes to allow hospitals to share nonhospital training costs effective July 1, 2010:

> If more than one hospital incurs these costs, either directly or through a third party, such hospitals shall count a proportional share of the time, as

9

> determined by written agreement between the hospitals, that a resident spends training in that setting.

*See* 42 U.S.C. §§ 1395ww(h)(4)(E) and 1395ww(d)(5)(B) (both as amended effective July 1, 2010). Unfortunately for the plaintiffs, the statutes and regulations in place during the cost reporting years at issue did not permit a hospital seeking reimbursement to incur anything less than all, or substantially all, of the costs of the training in the nonhospital setting. It is of no moment that UGS failed to disallow reimbursement to the Hospitals for costs incurred in connection with the joint training program at KCMS. *See Thomas Jefferson Univ.*, 512 U.S. at 517.

I also defer to the Secretary's reasonable interpretation of the Written Agreement Requirement, which was promulgated to enable the Secretary to quickly and easily verify compliance with the All or Substantially All Requirement. *See Covenant Med. Ctr., Inc. v. Sebelius*, 424 Fed. App'x. 434, 438 (6th Cir. 2011) ("The Secretary reasonably determined that the written agreement requirement would improve administrability, and thereby . . . avoid [ ] the wasteful litigation and continuing uncertainty that would inevitably accompany a purely case-by-case approach for determining whether a hospital incurs all, or substantially all, of the costs for [a particular] training program.") (quotations and citations omitted). Specifically, the Secretary requires the written agreement between the hospital and nonhospital to:

> indicate that the hospital will incur the cost of the resident's salary and fringe benefits while the resident is training in the nonhospital site and the hospital is providing reasonable compensation to the nonhospital site for supervisory teaching activities. The agreement must indicate the

compensation the hospital is providing to the nonhospital site for
supervisory teaching activities.

42 C.F.R. § 413.86(f)(4)(ii) (1998), AR at 0648.

Plaintiffs' documentation here does not comply with this requirement, which applied to all hospitals seeking Medicare reimbursement during the cost reporting years at issue in this case. The 1973 Agreement does not satisfy the Written Agreement Requirement because it was not executed, as required, between a hospital and nonhospital. *See* AR at 796–800. The Affiliation Agreements do not satisfy the Written Agreement Requirement because their use of the phrase "sufficient financing" is ambiguous. *See* AR at 931, 933, 935, 937, 939, 941. Put simply, the plain language of the Affiliation Agreements does not obligate the Hospitals to pay for all, or substantially all, of the costs of the KCMS training programs. The Affiliation Agreements also fail to sufficiently detail the compensation scheme for supervisory teaching activities and the amounts the Hospitals will actually pay for these activities. *See Kingston Hosp. v. Sebelius*, 828 F. Supp. 2d 473, 478 (N.D.N.Y. 2011). Finally, the KCMS Bylaws do not meet the Written Agreement Requirement for at least three reasons. First, they are not an agreement between a hospital and a nonhospital site. Second, they do not on their face commit the Hospitals to incur all, or substantially all, of the costs of the training program. Third, KCMS receives funding from private patients and grants, and the Hospitals cannot cite to any document confirming that KCMS did not use such funding to pay supervisory physician costs, resident salaries, or other nonhospital training costs. *See* AR at 314, 316, 340, 974, 991, 1000, 2644. In short, the documents plaintiffs proffer woefully fail to

11

meet the standards of the Written Agreement Requirement that the Secretary reasonably interpreted to ensure compliance with the All or Substantially All Requirement.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiffs' Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge